IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEVIN GLENN WOODS,

Plaintiff, No. CIV S-10-2031 GEB EFB P

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant. FINDINGS AND RECOMMENDATIONS

_______________________________/

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for a period of Social Security Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties' have filed cross-motions for summary judgment. For the reasons discussed below, the court recommends that plaintiff's motion be granted and that the case be remanded for payment of benefits.

I. BACKGROUND

Plaintiff formally applied for DIB and SSI on November 8, 2006, alleging an onset of disability as of July 31, 2005. AR 8. Plaintiff's applications were denied initially and on reconsideration. *Id.* On March 24, 2008, a hearing was held before ALJ Daniel J. Heely. *Id.*

////

Plaintiff was represented by counsel and testified at the hearing. *Id.* Vocational expert George A. Meyers also testified at the hearing. *Id.*

The ALJ's July 9, 2008 decision found that plaintiff had not been disabled at any relevant time.[1] *Id.* at 8-21. The ALJ made the following specific findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since July 31, 2005, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
> ...
>
> 3. The claimant has the following severe impairments: depression and hepatitis C (20 CFR 404.1520(c) and 416.920(c)).
> ...
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.1920(d), 416.926).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits under both programs. *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 and 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828, n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

...

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he limited [sic] to the performance of simple, routine tasks with occasional public contact, can occasionally climb ramps or stairs but never ladders, ramps or scaffolds, and occasionally balance, stoop, stoop, [sic] kneel, crouch or crawl, but can never work around moving machinery or unprotected heights.

...

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

...

7. The claimant was born on January 21, 1965 and was 40 years old, which is denied as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education[2] and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

...

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from July 31, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id.* at 10-21.

Plaintiff requested that the Appeals Council review the ALJ's decision. On May 26, 2010, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner of Social Security. *Id.* at 1-3.

////

---

[2] In fact, plaintiff has an eighth grade education and a GED. AR 17.

II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. ANALYSIS

Plaintiff argues that he meets listing 12.05(C), mental retardation.[3] The listing "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." The listing can be met by satisfying the listing in (C):

---

[3] Plaintiff also argues that the ALJ's step two findings are incomplete, the ALJ improperly discounted plaintiff's treating physician's opinions, the ALJ improperly discounted plaintiff's and his wife's testimony, and the ALJ assessed an incomplete residual functional capacity and vocational expert hypothetical. Because the case must be remanded for payment of benefits, the court does not address these arguments.

"A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." The listing continues: "For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)."

Thus, plaintiff meets the listing if he 1) has an IQ score between 60 and 70, and the evidence demonstrates or supports onset of the impairment before age 22, and 2) he has a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Contrary to defendant's assertion to the contrary, the ALJ did not explicitly discuss whether plaintiff met listing 12.05(C). *See* Dckt. No. 24 at 7. Instead, the ALJ discussed plaintiff's "mental impairment" in the context of listing 12.04. An evaluating state agency psychologist, Dr. McCray, gave plaintiff a WAIS-III IQ test. AR 234. Plaintiff's full scale IQ was 67, his verbal IQ was 74, and his performance IQ was 65. *Id.* Thus, two of plaintiff's IQ scores were in the required range for 12.05(C). The ALJ did not discredit Dr. McCray's IQ testing. On the contrary, the ALJ wrote at length about her testing and findings:

> [Plaintiff] described himself as good with money. He was able to follow instructions and two step commands, and he was oriented to person, place and time. Attention and concentration were adequate. Memory was intact, judgment was adequate and affect was full. Upon testing he was noted to perform in the impaired to borderline range. He had impaired sustained concentration, and was anxious. WAIS scores were suppressed. It was felt that his ability to understand and follow instructions was unimpaired, as his ability to perform simple repetitive tasks. His ability to perform detailed, but not complex tasks, is impaired if visual spatial skills are required. *Substantial weight is given to this opinion*.

*Id.* at 15-16 (emphasis added). Although the ALJ specifically mentioned the low IQ test results, he did not exclude them from the substantial weight he afforded to Dr. McCray's opinion. There are no contrary test results in the record. Defendant does not argue that the test results were not valid.

The next question, then, is whether the evidence demonstrates or supports onset of the impairment before age 22. A claimant is not required to produce an IQ score prior to age 22 in order to meet the listing. *See Gomez v. Astrue*, 695 F. Supp.2d 1049, 1061 (C.D. Cal. 2010). Rather, the question is whether the existing evidence supports to the onset of the impairment by that age.

Plaintiff argues that his adult IQ score creates a rebuttable presumption that the impairment existed before the age of 22.[4] The Ninth Circuit itself has not adopted this rule, but several other circuits have. *See Hodges v. Barnhart*, 276 F.3d 1265, 1268–69 (11th Cir. 2001) (IQ tests after age 22 satisfy the listing criteria and "create a rebuttable presumption of a fairly constant IQ throughout life") (citing *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001), *Luckey v. U.S. Dept. Of Health and Human Services*, 890 F.2d 666, 668 (4th Cir. 1989)). Courts within the Ninth Circuit are split. *Compare, e.g., Forsythe v. Astrue*, 2012 WL 217751, (E.D. Cal. Jan. 24, 2012) (collecting cases and adopting presumption); *Jackson v. Astrue*, 2008 WL 5210668 (C.D. Cal. Dec.11, 2008) at *6 ("several circuits have held that valid IQ tests create a rebuttable presumption of a fairly constant IQ throughout a claimant's life . . . . The Court finds the reasoning of the Seventh, Eighth, and Eleventh Circuits to be persuasive"); *Schuler v. Astrue*, 2010 WL 1443882 (C.D. Cal. Apr. 7, 2010) at *6 ("a valid qualifying IQ score obtained by the claimant after age 22 creates a rebuttable presumption that the claimant's mental retardation began prior to the age of 22, as it is presumed that IQ scores remain relatively constant during a person's lifetime"); *with Clark v. Astrue*, 2012 WL 423635 (E.D. Cal. Feb. 8, 2012) (declining to adopt rebuttable presumption); *Rhein v. Astrue*, 2010 WL 4877796 at *8 (E.D. Cal. Nov. 23, 2010) (finding rebuttable presumption would remove plaintiff's burden at step three).

---

[4] Defendant does not argue that there is no rebuttable presumption. Nor does defendant argue that evidence in the record rebuts the presumption. Instead, defendant argues that the limitations expressed in Dr. McCray's evaluation are consistent with the RFC the ALJ assigned to plaintiff. But this argument ignores the order of the steps in the sequential analysis for disability. The sole question at step three is whether plaintiff meets or equals a listing.

This court finds those cases adopting the rebuttable presumption test persuasive. Absent some evidence of a change in cognitive ability or some other persuasive information to account for a change in condition relating to the plaintiff's ability prior to age 22 and the date of the IQ testing, there appears to be no factual basis for concluding that the IQ inexplicably dropped after age 22.

Applying the rebuttable presumption rule, the next question is whether the presumption could be rebutted on remand; that is, whether evidence in the record could show that the onset of plaintiff's impairment was actually after age 22. The ALJ specifically noted in his opinion that plaintiff received a GED and a certificate from University of the Pacific in substance abuse counseling. *See* AR at 17 ("The claimant testified that he obtained his GED in approximately 1997, and he took some night classes at the University of Pacific for eleven months, and he obtained a certificate to become a certified substance abuse counselor which ended at the beginning of 2004"), 19 ("Dr. Zia's medical source statement states that the claimant has 'low IQ or reduced intellectual functioning,' and he notes that the claimant dropped out of the seventh grade. Yet the claimant was in fact able to obtain a GED, as well as a college-level certification at the University of Pacific."). But plaintiff was 32 years old in 1997, when he received his GED, and was 39 years old in 2004, when he obtained his counseling certificate.[5] Evidence of these achievements, ten and seventeen years after plaintiff turned 22, has tenuous relevance at best to plaintiff's intellectual functioning before age 22.

The only evidence in the record that is directly relevant to the time period in question confirms that plaintiff's low IQ manifested before the age of 22. Plaintiff testified that he dropped out of school after the eighth grade. AR 27. Indeed, McCray's report states that plaintiff received special education services while he was in school. *Id.* at 230. Thus, it appears

[5] Plaintiff testified that he had "no idea" what his GPA was. *Id.* He testified that "I was doing pretty good at first and, then towards the end I was just having trouble concentrating . . . instead of having me write the stuff, [the instructor] left me have, dictate it to my wife and my wife typed the stuff for me." *Id.* at 37.

that on remand defendant would not be able to rebut the presumption of onset before age 22. To the contrary, the available evidence relevant to that question simply reinforces the presumption that the IQ scores are reflective of what plaintiff's intellectual function was at and before the age of 22.

As for the second prong of Listing 12.05(C), the ALJ himself found that plaintiff had the severe mental and physical impairments of depression and hepatitis C. *Id.* at 10. By definition, a "severe" impairment significantly limits an individual's ability to perform basis work activities. *See id.* at 9. Thus, according to the ALJ's own findings, plaintiff met the second criteria for listing 12.05(C).

The ALJ's findings of fact show that plaintiff meets or equals listing 12.05(C) and there is simply nothing further to be done on remand. Under 42 U.S.C. § 405(g), "The court shall have the power to enter, upon pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." The decision to remand an action to the Commission for an award of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir.1989). As explained above, no useful purpose would be served by remanding this case for further administrative proceedings.

IV. CONCLUSION

Because plaintiff meets or equals listing 12.05(C), this case should be remanded for payment of benefits. Accordingly, it is hereby RECOMMENDED that:

1. Plaintiff's motion for summary judgment be granted;

2. The Commissioner's motion for summary judgment be denied;

3. This case be remanded for payment of benefits; and

4. The Clerk be directed to enter judgment in plaintiff's favor.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 7, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE